NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ELBEX VIDEO, LTD.** | : |
| | : Civil Action No. 06-5178 (PGS) |
| Plaintiff, | : |
| v. | : **OPINION** |
| **TYCO INTERNATIONAL, LTD., SENSORMATIC ELECTRONICS CORPORATION and JOHN DOES 1-10** | : |
| Defendants. | : |

**SHERIDAN,  U.S.D.J.**

Plaintiff Elbex Video brings this suit against Defendants Tyco and Sensormatic, and John Does 1-10 for patent infringement (over which this Court has original jurisdiction) and for tortious interference and unjust enrichment.  Defendant has moved to dismiss the common law claims for lack of subject matter jurisdiction (or alternatively, under the doctrine of forum non conveniens), claiming this Court cannot exercise supplemental jurisdiction over the common law claims due to the lack of a sufficient factual nexus between them and the patent claims.  Plaintiff cross-moves for leave to file an amended complaint in order to set forth allegations demonstrating the factual nexus between the patent and common law claims, or for discovery regarding issues that Defendant raised by relying on documents outside the pleadings.  For the reasons set forth below, Tyco's motion to

dismiss is granted, as the Court declines to exercise supplemental jurisdiction over the tortious interference and unjust enrichment claims.

I.

Plaintiff Elbex Video, Ltd. ("Elbex") is a Japanese corporation. Defendant Tyco International, Ltd. ("Tyco") is a corporation organized under the laws of Bermuda, with its principal place of business in Bermuda; Tyco conducts business in New Jersey. Defendant Sensormatic Electronics Corporation ("SEC") is a company with a place of business in Florida and is in a chain of companies owned and operated by Tyco. Tyco designs, manufactures, services, and markets SEC products, and Tyco controls SEC. SEC also does business in New Jersey. In this motion for dismissal of the common law claims, there are a morass of related corporate entities involved. Plaintiff Elbex has two entities – Elbex Japan and Elbex Israel (except where necessary for clarity purposes, they are simply referred to collectively as "Elbex"). Similarly, Tyco controls SEC and Tyco Building Services Pte, Ltd. ("TBS"), a Singapore corporation (except as necessary for clarity purposes, they are referred to collectively as "Tyco").

The first two counts of Elbex's complaint are for patent infringement. Elbex is the assignee of all right, title, and interest in U.S. Patent. No. 4,943,864 ("the '864 Patent"), which is entitled "Closed Circuit Television Apparatus for Supervisory System; and U.S. Patent. No. 5,579,060 ("the '060 Patent"), which is entitled "Data Transmitter for Selectively Transmitting Data to Receivers Via Transmission Lines Switched On or Over in Synchronization with and External Synchronizing Signal." Elbex alleges that Tyco has offered for sale, sold, or installed closed circuit television ("CCTV") products and systems in the United States in violation of the '864 and '060 Patents. The patents relate to the manner in which video and data are transferred from a CCTV monitor and the way the data is displayed on the monitor.

Counts three through seven are claims for tortious interference with contractual relationships and with prospective economic advantage and unjust enrichment with regard to certain foreign contracts (collectively referred to as "the common law claims"). Elbex contracted with Megason Electronics & Control, Ltd. ("Megason") (an Israeli company) to supply CCTV systems for the new Changi Prison complex in Singapore (the "Singapore Prison Project"). Elbex agreed to provide its CCTV cameras and systems to any joint venture that Megason may enter; and it would assist Megason in securing a CCTV contract for the Singapore Prison Project.[1]

In or about 2001, a joint venture called TMS JV ("TMS") was organized under the laws of Singapore to secure a contract with the government of Singapore to install a security CCTV system for the Singapore Prison Project. The parties involved in the joint venture were Tyco, Megason, and Signalor Ltd. ("Signalor") (also an Israeli company).[2] Tyco owned 50% of the TMS joint venture. Elbex contends that Tyco knew of the agreement between Elbex and Megason, whereby Elbex would be the supplier of the CCTVs for the Singapore Prison Project. At some point, Elbex allegedly agreed with TMS, via Megason, to supply CCTV cameras for the Singapore Prison Project.

TMS was ultimately selected to supply the security system for the Singapore Prison Project using Elbex's equipment. TMS signed an agreement with the Singapore prison authorities to install the system for 27 million Singapore dollars. Elbex alleges that Tyco induced Megason and TMS to

---

[1] Defendant contends that this agreement was oral.

[2] Plaintiff notes that another Elbex sister company, Elbex Singapore, had initially approached TBS (the Singapore Tyco subsidiary) to sell CCTV systems prior to the Changi Prison Project. TBS, in reply, asked if Elbex Israel would be interested in forming a joint venture to bid on the Singapore Prison Project; Elbex Israel declined, so TBS persistently requested Elbex Japan's help in finding a suitable partner. TBS allegedly assured Elbex Japan that if Elbex Japan or Elbex Israel would find a suitable partner for TBS, TBS would use only Elbex Japan equipment for the Singapore Prison Project. Based on such assurances, Elbex Japan introduced TBS to Megason, which led to the formation of TMS.

breach their agreement with Elbex by misrepresenting to the Singapore prison authorities that Elbex's CCTV equipment did not comply with the prison authorities' requirements and by falsely alleging that Elbex was seeking more money for the equipment than had previously been quoted. Tyco also allegedly represented to the Singapore prison authorities that, in order to comply with the specifications, Elbex must develop new products, and for all practice purposes, the Singapore prison authorities would be better served by purchasing equipment from another vendor. Because of TMS's refusal to perform under the contract, Elbex lost the sale of CCTV equipment for use in the Singapore Prison Project. Elbex alleges that Tyco made these alleged misrepresentations in order to cut Elbex out of the deal so Tyco could offer its CCTV (made by SEC) – a system that allegedly infringed on the '060 Patent. The Tyco system was never used in the Singapore Prison Project, but it was allegedly offered and to TMS by Tyco.

Aside from these agreements and alleged breaches, there is a complex procedural history that took place both in Israel and New York. On August 10, 2003, Elbex filed a lawsuit against Tyco and Megason in Israel for the alleged conduct mentioned above relating to the Singapore Prison Project. The Israeli Court ordered that the matter proceed before the Singapore International Arbitration Centre, and stayed the action before it. The matter is still pending.

In June 2003, Elbex filed a lawsuit against Tyco in the Southern District of New York alleging, *inter alia*, patent infringement[3] and tortious interference (related to the Singapore Prison Project). Tyco moved to dismiss, but Judge Berman denied the motion, finding a sufficient "loose factual connection" between the patent infringement claim and the tortious interference claims due

---

[3] The patent at issue in the first Southern District of New York case was a different one altogether from the patents at issue in this matter.

to identity of parties and competing products. Thereafter, the parties settled the patent dispute, and the remaining common law claims were dismissed without prejudice.

On December 3, 2004, Elbex filed a second lawsuit in the Southern District of New York against Tyco, alleging patent infringement of yet another patent (also different from the ones at issue in this case). Elbex did not include the common law claims in its complaint. Judge Owen granted summary judgment against Elbex on the patent claims and Elbex appealed. Finally, on October 27, 2006, Elbex filed the instant case in the District of New Jersey.

II.

Pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(1), a claim can be dismissed for "lack of jurisdiction over the subject matter." This motion to dismiss may be asserted at any time in a case. *In re Kaiser Group Int'l, Inc.*, 399 F.3d 558, 565 (3d Cir. 2005). In a motion to dismiss based on subject matter jurisdiction, "the standard . . . is much more demanding [than the standard under 12(b)(6)]. 'When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.'" *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). If the defendant's attack is facial, the court may take all allegations in the complaint as true and "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Liu v. Gonzales*, 2007 U.S. Dist. LEXIS 74611, at *7 (D.N.J. Oct. 5, 2007). The standard of review differs substantially from that under Rule 12(b)(6), however, when the challenge is factual. Then, there is no presumption of truthfulness to a plaintiff's claims in the complaint. *RLR Invs., LLC v. Town of Kearny*, No. 06-cv-4257, 2007 U.S. Dist. LEXIS 44703, at *8 (D.N.J. June 20, 2007) (citations omitted). Thus, consideration of the motion does not have to be limited – conflicting evidence may be considered so that the court can decide factual issues that may bear on its jurisdiction. *Id.* Furthermore, "[w]hen resolving a factual

challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff." *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000)).  "However, '[w]here an attack on jurisdiction implicates the merits of plaintiff's [F]ederal cause of action, the district court's role in judging the facts may be more limited.'" *RLR Invs., LLC*, 2007 U.S. Dist. LEXIS 44703 at *9 (internal citations omitted).

III.

This Court has jurisdiction over the patent claims pursuant to 28 U.S.C. § 1338.  Section 1338(a) states: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.  Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases."

As to the remaining claims – the common law claims – it should be noted initially that this Court does not have subject matter jurisdiction based on diversity of citizenship/alienage.[4]  It is constitutionally mandated that the diversity statute "provides for alienage jurisdiction only over

---

[4] The Diversity Statute, 28 U.S.C. § 1332(a), states:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between--
>   (1) Citizens of different States;
>   (2) citizens of a State and citizens or subjects of a foreign state;
>   (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>   (4) a foreign state, defined in section 1603(a) of this title [28 USCS § 1603(a)], as plaintiff and citizens of a State or of different States.

controversies between a subject of a foreign state on one side and a citizen of a State on the other." *Abi Jaoudi & Azar Trading Corp. v. Cigna Worldwide Ins. Co.*, No. 91-6785, 1992 U.S. Dist. LEXIS 10910, at *3 (E.D. Pa. July 27, 1992). Well-established law dictates that diversity jurisdiction has never been "expanded to include suits between two aliens." *Singh v. Daimler-Benz, AG*, 800 F. Supp. 260, 261 (E.D. Pa. 1992). Here, Elbex is a "corporation organized and existing under the laws of Japan" (Pl. Compl. ¶ 2). Tyco "is a corporation organized and existing under the laws of Bermuda, with a principal place of business located . . . [in] Bermuda" (Pl. Compl. ¶ 3). Alienage jurisdiction thus is absent. Because this Court lacks diversity jurisdiction over the common law claims, Plaintiff relies on this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

"Congress has authorized district courts to exercise jurisdiction supplemental to their federal question jurisdiction in *28 U.S.C. § 1367*, which states: 'in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Lyon v. Whisman*, 45 F.3d 758, 759-60 (3d Cir. 1995). Pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) (codified in 28 U.S.C. § 1367), there are three requirements that must all be met for a district court to have supplemental jurisdiction over state causes of action: (1) "the federal claim must have substance sufficient to confer subject matter jurisdiction on the court"; (2) "[t]he state and federal claims must derive from a common nucleus of operative fact"; and (3) "if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *Id.* at 725.

The *Lyon* case focused on the second element of supplemental jurisdiction – the "common nucleus of operative fact" ("CNOF"). Such is the dispute in this case. The *Lyon* court indicated that

the test for CNOF "is not self-evident" and that the inquiry has a "fact-sensitive nature." *Lyon*, 45 F.3d at 760. The Third Circuit stated that there are two extremes to the supplemental jurisdiction analysis. The court observed that "district courts will exercise supplemental jurisdiction if the federal and state claims 'are merely alternative theories of recovery based on the same acts.'" *Id.* at 761 (citations omitted). At the other extreme, the court noted that "we have refused to exercise supplemental jurisdiction over state claims totally unrelated to a cause of action under federal law." *Id.* However, for the cases that fall along the spectrum in between these two poles, the Third Circuit noted that "the courts have not been consistent in defining the nexus between the federal and state claims necessary to support supplemental jurisdiction in these closer cases." *Id.* Judge Greenberg noted that some courts adopt a "'loose' nexus" test while "at least one court strongly and explicitly has rejected this loose nexus test," and other courts "implicitly reject the loose nexus test." *Id.* at 761-62. Critically, however, the court held that "we see no need to define how close the nexus between the federal and state claims must be to support the exercise of supplemental jurisdiction" because under any standard, the factual nexus particular to the *Lyon* facts was "inadequate for that purpose." *Id.* at 762. It appears that the Third Circuit did not definitively adopt or reject any standard. There is a split among the district courts in the Third Circuit as to how to interpret *Lyon*.[5]

---

[5] *Compare Paul v. Deloitte & Touche LLP*, No. 06-225, 2007 U.S. Dist. LEXIS 60639, *7-8 n.30 (D. Del. Aug. 20, 2007) and *Derasmo v. Hospitality Franchise Sys.*, No. 93-46, 1995 U.S. Dist. LEXIS 6349 (D.N.J. May 8, 1995) (interpreting *Lyon* as expressly rejecting the "loose nexus" test) *with Hall v. Babcock & Wilcox*, No. 94-951, 1999 U.S. Dist. LEXIS 11699, at *25 (W.D. Pa. July 16, 1999), *Shook v. County of Allegheny*, No. 07-153, 2007 U.S. Dist. LEXIS 63408, at *9-10 (W.D. Pa. Aug. 28, 2007) (opining that *Lyon* did not expressly adopt one test or another) and *Freedom Med. Inc., v. Gillespie*, No. 06-3195, 2007 U.S. Dist. LEXIS 68396, at *20 (E.D. Pa. Sept. 14, 2007), *Hyman v. WM Fin. Servs.*, No. 06-4038, 2007 U.S. Dist. LEXIS 41433, at *13-14 (D.N.J. June 7, 2007) (stating that the holding in *Lyon* was specific to the employer-employee relationship).

Thus, it is unclear what standard the Third Circuit actually applies in supplemental jurisdiction inquiries.

The *Lyon* court instructed that the inquiry is a fact-sensitive one taking into consideration "critical background fact[s]," and Judge Greenberg indicated that there was "so little overlap between the evidence relevant to the FLSA and state claims" that there was no factual nexus. *Lyon* 45 F.3d at 763. Furthermore, "the Lyon court declared, that, in a federal court action in which jurisdiction is based upon the FLSA, the fact that both state and federal claims arise out of the 'employment relationship,' without more, provides an insufficient factual nexus to confer supplemental jurisdiction." *Krause v. Cherry Hill Fire Dist. 13*, 969 F. Supp. 270, 281 (D.N.J. 1997) (internal citations omitted). The *Krause* court further noted that "The court in Lyon also observed that the FLSA was a statute with a narrow, well-defined purpose . . . . As such, the Third Circuit expressed doubt that Congress, in enacting the FLSA, intended to authorize supplemental jurisdiction to the full extent of Article III. Indeed, the Lyon court warned that 'when a court exercises federal jurisdiction pursuant to a rather narrow and specialized federal statute it should be circumspect when determining the scope of its supplemental jurisdiction.'" *Id.* (citations omitted). The Patent Act, 35 U.S.C. § 1, *et seq*, is arguably narrow and specialized enough to have a "well-defined purpose" within the meaning of the language of *Lyon* and *Krause*. Thus, the Court takes this into consideration in determining the reach of its supplemental jurisdiction.

This Court must therefore evaluate the case at hand for the overlap of critical background facts between the U.S. patent infringement claims and the common law claims. The common law claims in this case arise out of Plaintiff's allegations that Tyco misrepresented to the Singapore prison authorities that Elbex's CCTV system would not satisfy the technical requirements for the

prison, and that Tyco falsely alleged to the Singapore prison authorities that Elbex was increasing the price for the CCTV equipment that it had previously quoted.[6]

        1.       *The Court's Power to Hear the Common Law Claims: CNOF*

As Elbex observes, it seems fairly common for courts to allow supplemental jurisdiction for tortious interference claims that accompany a federal patent law claim. *See American Ceramicraft, Inc. v. Eisenbraun Reiss, Inc.*, No. 92-2851, 1993 U.S. Dist. LEXIS 19950, at *1-2 (D.N.J. June 14, 2003); *A.K. Stamping Co. v. Instrument Specialties, Co.,* 106 F. Supp. 2d 627, 631 (D.N.J. 2000). In *Mylan Pharmaceuticals, Inc. v. Kremers Urban Development*, No. 02-1628, 2003 U.S. Dist. LEXIS 20665 (D. Del. Nov. 14, 2003), the court implied that supplemental jurisdiction over the state tortious interference claims may be appropriate, but declined to opine on the matter. *Id.* at *10-*11. Despite this trend, the Court engages in further analysis because this is a challenge to its subject matter jurisdiction – its very power to hear the claims.

As noted above, "[a] Rule 12(b)(1) motion to dismiss can take two forms," facial and factual. *Young v. Francis*, 820 F. Supp. 940, 943 (E.D. Pa. 1993) (internal citations omitted). Despite its attachment of various pleadings and documents from other court cases in support of its motion, Tyco

---

[6] In New Jersey, the essential elements of a tortious interference with contractual relations claim are as follows: "(1) existence of a contract; (2) defendant's knowledge of that contract; (3) defendant's *intentional and improper* procuring of the breach; and (4) damages. *NXIVM Corp. v. Sutton*, No. 06-1051, 2007 U.S. Dist. LEXIS 46471, at *41 (D.N.J. June 27, 2007) (citations omitted) (emphasis added). "Under New Jersey law, the prima facie elements of tortious interference with prospective economic advantage include: (1) a plaintiff's existing or reasonable expectation of economic advantage or benefit; (2) a defendant's knowledge of the plaintiff's expectancy; (3) *wrongful and intentional* interference with that expectancy by the defendant; (4) a reasonable probability that the plaintiff would have received the anticipated economic advantage absent such interference; and (5) damages resulting from the defendant's interference." *Arzoomanian v. British Telecomms., PLC*, No. 03-374, 2007 U.S. Dist. LEXIS 2715, at *34 (D.N.J. Jan. 11, 2007) (citations omitted) (emphasis added). As noted below, however, it is unclear whether Japanese or Singapore law apply to this case. New Jersey law will likely not govern the foreign tort claims (and neither party claims it does); as such, the reference to New Jersey tort law is for purposes of a frame of reference only.

clearly makes a facial subject matter jurisdiction challenge. In its brief in support of its motion, Tyco states "Elbex Japan's *complaint* fails to establish the requisite 'common nucleus of operative fact' between its patent claims and the Singapore claims. It clearly *does not plead* federal and foreign law claims that 'are merely alternative theories of recovery based on the same act,' which New Jersey courts have found to be the basis for finding supplemental jurisdiction" (Def. Brief at p.10) (emphasis added). Thus, under the standard applicable to a "facial attack" 12(b)(1) motion, the Court must accept the allegations in the complaint as true.[7] *See generally, Doe v. Montgomery Hosp.*, No. 95-3168, 1995 U.S. Dist. LEXIS 15476 (E.D. Pa. Oct. 18, 1995) (facial attack found in a case where defendant alleges lack of CNOF).

Elbex's contention in the patent infringement claim is that Tyco's matrix/camera combination infringes the '060 Patent. Elbex alleges that a jury must have to understand the intricacies of how camera matrices work in order to understand both the patent claim and the common law claims. The common law claims are, in part, based upon an alleged misrepresentation about the technical specifications of the Elbex CCTV system (which caused Megason to back out of the contract whereby Elbex would supply said cameras).[8] Elbex says, in its opposition brief,

---

[7] *See EEOC v. Creative Playthings, Ltd.*, 375 F. Supp. 2d 427, 431 n.1 (E.D. Pa. 2005). In *EEOC*, defendant only submitted the complaint for the court's consideration, and therefore the court found that "the analysis of subject matter jurisdiction at this stage of the litigation is necessarily a facial one." *See also Cudjoe v. Dep't of Veterans Affairs*, No. 03-5376, 2004 U.S. Dist. LEXIS 12064, at *3 (E.D. Pa. June 28, 2004), where the court stated that since the defendant had not filed an answer, the motion was "necessarily a facial attack." Here, Tyco has not submitted an answer (although SEC has), but it has attached various copies of complaints, opinions, and orders in cases taking place in Israel and New York. However, based on the obvious attack on the language of the complaint, it is clear that the subject matter jurisdiction challenge here is a facial one despite Tyco's various attachments.

[8] Under New Jersey tortious interference law,

> [m]isrepresentations are ordinarily recognized as satisfying the "wrongful, improper means of interference" element of a tortious

"[w]hether [Tyco's] equipment complied [with the Singapore prison authorities' specifications] requires an understanding of the Tyco system and components.  The same understanding will be required to decide whether Tyco systems, products and components infringe the '060 patent."  Elbex essentially alleges that the fact finder would have to understand the technical specifications of Tyco's CCTV system in order to figure out whether Tyco's statement to the Singapore prison authorities was, indeed, a misrepresentation – that is, if Elbex's equipment *did* comply with the specifications in the agreement, Tyco lied to the Singapore prison authorities.  Simply put, the alleged misrepresentation to the Singapore prison authorities was that Elbex's CCTVs do not comply but Tyco's CCTVs do comply.  Thus, whether Tyco's CCTVs complied with the Singapore prison authorities' specifications is material to the determination of whether a misrepresentation was made, and according to Elbex, the "systems, products and/or components that will be the subject of the patent infringement phase of the trial are the same systems, products and/or components that will play a prominent role in the tort phase of the trial."[9]

> interference claim.  Indeed, one may be subject to liability for intentional interference even when his misrepresentation is not of such a character as to subject him to tort liability for the misrepresentation alone.  Nonetheless, to be liable for tortious interference a plaintiff must still demonstrate that the defendant's conduct, be it independently tortious or not, was undertaken with malice. Malicious conduct, in this context, is conduct that is "transgressive of generally accepted standards of common morality or of law."

*Material Techs. v. Carpenter Tech. Corp.*, No. 01-2965, 2004 U.S. Dist. LEXIS 28892, at *72 (D.N.J. Dec. 14, 2004) (internal citations omitted).  While a misrepresentation would satisfy an essential element of a tortious interference claim under New Jersey law, it is unclear whether Japanese or Singapore law will apply to this case.  The parties, however, do not appear to dispute that the misrepresentation is at the heart of the common law claims, and thus this Court does not have to decide the choice of law issue at this juncture.

[9] The Court notes that Tyco points out, in its reply brief, that the technical specifications of the Tyco systems are relevant to the patent claims but not the common law claims, and what

These argued connections between the U.S. patent and common law claims arise only in the context of Elbex's opposition brief to the current motion. Said connections do not appear explicitly on the face of the complaint.[10] However, since this is a facial dispute, the Court may take all allegations in the complaint as true and "may dismiss the complaint only if it appears *to a certainty* that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Liu v. Gonzales*, 2007 U.S. Dist. LEXIS 74611, at *7 (D.N.J. Oct. 5, 2007) (emphasis added). Here, Elbex may have a colorable claim of supplemental subject matter jurisdiction. The complaint does not draw a specific parallel between the technologies at issue in the U.S. patent and the common law claims; however, because the patent claim was brought together with the common law claims, and because the complaint specifies that in both claims, technical specifications of CCTV technology are at issue (see Compl. ¶¶ 29, 26, 47, 51, 64, 67, 70), it is reasonable for a fact finder to believe they could involve the same technology. Consequently, it cannot be said that "it appears to a certainty" that Elbex has no claim for subject matter jurisdiction.

Thus, assuming that the technical specifications at issue are the same between the patent infringement claim and the common law claims, this Court finds that such "critical background

---

really is at issue in the common law claims is whether the *Elbex* CCTVs met the Singapore Prison Project requirements. The central inquiry in the misrepresentation claim would be whether Tyco lied about the Elbex products being noncompliant, not whether it claimed its own SEC products were compliant (especially since the SEC products were never actually used in the Singapore Prison Project – Philips cameras were used). While this is a good point, and arguably correct, it does not affect the analysis under the proper 12(b)(1) standard as enunciated above. Considering these opposing arguments arose in the briefs alone, and not in the complaint, the Court must look mainly to the complaint to decide the motion.

[10] Indeed, Tyco notes that "Elbex has failed to allege or demonstrate that the technical features at issue in the U.S. patent infringement claims are the same technical features that are at issue in connection with meeting the Singapore Prison Department specifications. Without this allegation, there can be no factual nexus as a matter of law."

facts" are overlapping so as to justify a finding of a CNOF and subject matter jurisdiction. The Court need not address the other two prongs of *Gibbs* – the parties do not dispute the sufficiency of the federal patent claim or whether, if a CNOF is found, the claims would likely be tried together.[11] *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). However, now that the Court has found that it has the power to hear the case, it is another issue as to whether the Court chooses, within its discretion, to actually hear the claims.

    *2.    Discretionary Analysis Under 28 U.S.C. § 1367*

Once the Court determines that subject matter jurisdiction exists pursuant to the analysis set forth by the Supreme Court in *Gibbs*, it must determine, as a matter of discretion, whether it will allow the supplemental claims to proceed. Section 1367(c) states:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The Court, under section 1367(c), may decline to exercise supplemental jurisdiction based on general principles of "judicial economy, convenience, and fairness to the litigants." *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir. 1993) (citations omitted).

---

[11] Indeed, the U.S. patent claims are clearly sufficient, and because the Court finds a CNOF, it is logical to assume that the U.S. patent claims and the foreign tort claims would be tried in the same action.

The case of *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 825 F. Supp. 73 (D. Del. 1993) is instructive with regard to section 1367(c). *Mars* was a patent infringement case where plaintiff sued defendant on allegations that defendant infringed claims of plaintiff's U.S. patent as well as its counterpart Japanese patent (which related to the same technology). Defendant moved to dismiss the foreign patent claim. The District Court assumed "without deciding that it has jurisdiction to hear Mars' claim" but declined "to exercise that jurisdiction pursuant to its authority to decline to exercise supplemental jurisdiction and for reasons of comity." *Id.* at 74.

First, the *Mars* court relied on section 1367(c)(1) – that "the claim raises a novel or complex issue of State law." The court noted that even though the plaintiff's claim did not raise an issue of *state* law, it did "raise novel and complex issues of Japanese law" such as discovery and substantive Japanese patent law issues. *Id.* at 76. The court held that because "the principles embodied in subsection [(c)(1)] are implicated by complex issues of foreign law as well as state law, subsection [(c)(1)] suggests that the Court should decline to exercise jurisdiction over Mars' Japanese patent claim." *Id.* Here, the parties do not dispute that complex foreign law will govern the common law claims – either Singapore or Japanese law will apply (which one, however, is unclear).[12] The common law claims involve contracts with a Singapore joint venture to provide products to a Singapore prison, and revolve around alleged torts that occurred in Singapore by and between foreign parties. Tyco notes that Singapore has distinct tort law regarding these situations, and very specific defenses thereto. Thus, it is undisputed that complex foreign tort law will likely govern the common law claims, and this Court is well within its discretion to decline supplemental jurisdiction over those claims based on section 1367(c)(1).

---

[12] The Court need not engage in a choice-of-law analysis because Elbex, in its opposition, does not dispute that foreign law will govern these claims.

Second, the *Mars* court relied on section 1367(c)(2) – that "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction . . . ." The court predicted that if it were to deny the motion to dismiss,

> a significant proportion of the time and effort in discovery in this case would be directed to the issues raised by the Japanese patent claim. Furthermore, Mars' Japanese patent claim raises difficult questions of Japanese law that would consume a substantial proportion of the time necessary to resolve the legal issues in this case. This task would be complicated by having to agree on the proper translation of laws, documents and other communications.

*Id.* Here, since it is undisputed that complex foreign law will govern the common law claims, this Court finds, as in *Mars*, there is a significant possibility that the accompanying complications in deciding complex foreign law claims could end up predominating over the main dispute – the U.S. patent infringement claim. This Court would have to spend significant judicial resources learning foreign law, translating foreign documents and laws after discovery, and instructing the jury on the application of either Japanese or Singapore tort law and defenses to claims between non-United States citizens.[13] As complicated as U.S. patent infringement suits are, it appears as though the main federal claim would take a back seat to the resolution of a multitude of foreign law issues. Thus, the Court is also well within its discretion to decline supplemental jurisdiction over the common law claims based on section 1367(c)(2).

---

[13] The gravamen of Elbex's opposition to the Court's exercise of its discretion is that it would be a waste of judicial resources to decline subject matter jurisdiction over the common law claims because "two years of expensive discovery on these claims" had already occurred in a previous action, and that it would be "exceptionally wasteful to force the parties to start over again in Singapore." In weighing this argument with regard to "judicial economy," the potential monopoly of judicial resources the common law claims would have in this Court indicates that it is far less wasteful to decline subject matter jurisdiction than to grant it merely because Elbex has already conducted discovery in an earlier lawsuit based on the same claims. Furthermore, it is unclear as to why Elbex would have to "start over" in Singapore if it has already completed two years of discovery. Also, as Tyco notes, Elbex waited for almost two years after Judge Berman dismissed its foreign tort claims before filing them in this Court.

Lastly, the *Mars* court relied on principles of international comity in deciding to decline supplemental jurisdiction. While most of its argument revolved around comity in international patent disputes, it cited a passage from a case dealing with the Lanham Act that appears relevant to foreign law claims generally:

> The rights and liabilities of United States citizens who compete with foreign nationals in their home countries are ordinarily to be determined by the appropriate foreign law. (citations omitted). This fundamental principle . . . is based upon practical considerations such as the difficulty of obtaining extraterritorial enforcement of domestic law, as well as on considerations of international comity and respect for national integrity.

*Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956). The *Vanity Fair* case expresses a hesitancy in federal courts' involvement in disputes involving United States citizens competing abroad. Here, Elbex is a Japanese corporation and Tyco is a Bermuda corporation, and all the common law claims occurred abroad. If the federal judiciary is hesitant to resolve disputes involving foreign law claims where one party is a United States citizen, it logically should exercise even more restraint in resolving disputes based on foreign law where *neither party* is a United States citizen. Moreover, the Israeli Court already determined that arbitration in Singapore is an appropriate forum for certain contract issues, and this Court similarly concludes that it is also the proper forum for adjudication of the common law claims. In the interest of international comity and the potential practical considerations involved in enforcing a domestic judgment in Singapore, this Court is well within its discretion to decline supplemental jurisdiction over the common law claims.

Tyco's motion to dismiss the common law claims is hereby granted. Elbex's motion to amend the complaint and for further discovery is hereby denied.

                                              *s/Peter G. Sheridan*
                                              PETER G. SHERIDAN, U.S.D.J.

April 9, 2008